IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:24-CV-00123-KDB-DCK

| | |
|---|---|
| DAVID MICHAEL DOWELL, | |
| Plaintiff, | |
| v. | **ORDER** |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**THIS MATTER** is before the Court on Plaintiff David Dowell's appeal of an unfavorable administrative decision denying his application for disability insurance benefits under the Social Security Act (Doc. No. 5); Defendant Commissioner of Social Security's ("Commissioner") Response (Doc. No. 6); and the Memorandum and Recommendation ("M&R") of the Honorable Magistrate David C. Keesler (Doc. No. 8), which recommends that the Commissioner's decision be affirmed. Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Commissioner's decision to deny Mr. Dowell Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Court will adopt the M&R and the Commissioner's decision will be **AFFIRMED**.

I.  BACKGROUND

No party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985) (explaining the Court is not required to review, under a de

1

novo or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised).

## II.     STANDARD OF REVIEW

A. <u>**Review of the Commissioner's Determination**</u>

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Indeed, the Act specifically provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Fourth Circuit has explained that "[s]ubstantial evidence has been defined as being more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson,* 402 U.S. at 401); s*ee also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has thus long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the

Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

**B. Review of the Memorandum and Recommendation**

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of dispositive pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, the Court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

In June 2016, Mr. Dowell filed an application for disability insurance benefits, alleging disability beginning in November 2013. Doc. No. 2-14 at 13. More specifically, he claimed that he was disabled based on his post traumatic stress disorder ("PTSD") and other ailments that prevented him from working. *See generally* Doc. No. 5. Upon review of the matter, the Magistrate Judge determined that there was substantial evidence in the record to support the ALJ's findings that Mr. Dowell was not disabled under the law during the relevant period and recommended

affirmance of the Commissioner's decision to deny benefits. Mr. Dowell timely objects to the M&R, primarily arguing that the Fourth Circuit's decisions in *Rogers* and *Shelley C* should lead to a finding that he is disabled, and that the Magistrate Judge erred in distinguishing his case from those decisions. Doc. No. 9 at 1.

A. **The ALJ Decision**

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Mr. Dowell was disabled under the law during the relevant period.[1] The ALJ confirmed at step one that Mr. Dowell had not engaged in substantial activity during the period from November 5, 2013, through his date last insured ("DLI") on June 30, 2015. Doc. No. 2-14 at 16. At step two, the ALJ found that Mr. Dowell had medically determinable impairments that significantly limit his ability to perform basic work activities. These severe impairments included, "post-traumatic stress disorder (PTSD), major depressive disorder, lumbar degenerative disc disease, [and] obesity (20 CFR 404.1520(c))." *Id.* At step three, the ALJ nevertheless determined that Mr. Dowell's impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). *Id.* at 17.

---

[1] The five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)–(g) and 404.1520(a)–(g). The claimant has the burden of production and proof in the first four steps, but at step five, the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Before proceeding to step four, the ALJ found that Mr. Dowell retained the following residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 404.1567(c) with the following additional limitations: The claimant could understand, remember, and carry out unskilled work of a routine and repetitive nature. The claimant could maintain attention and concentration for at least 2-hour periods of time sufficient to carry out unskilled work, over the course of a normal workday, and a normal workweek. The claimant could adapt to routine, infrequent workplace changes at a non-production pace (meaning no assembly line/conveyor belt type jobs). The claimant could tolerate occasional interaction with the public, and can tolerate occasional interaction with coworkers and supervisors, meaning work not requiring teamwork for task completion.

*Id.* at 19.

In explaining how she determined this RFC, the ALJ reviewed Mr. Dowell's medical history and found that his medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms." *Id.* at 20. Next, the ALJ evaluated a series of factors, including Mr. Dowell's daily activities, symptoms, precipitating and aggravating factors, medications and treatments, and other details concerning his functional limitations due to pain and other symptoms. *Id.* The ALJ then considered prior medical opinions and administrative medical findings, referencing evidence from the record to assign a level of persuasive value to each finding. *Id.* at 20–26.

At step four, the ALJ found that Mr. Dowell was unable to perform his past relevant work as a technical support specialist, automobile salesperson and security guard. *Id.* at 26. Then, finally, at step five, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that Mr. Dowell could perform based on his age, education, work experience, and RFC. *Id*. at 26–27. These jobs included linen room attendant, laundry worker I and industrial cleaner. *Id.* at 27. In sum, the ALJ found that Mr. Dowell was not disabled under the Social Security Act from November 5, 2013, through his DLI. *Id*.

5

Case 1:24-cv-00123-KDB-DCK   Document 10   Filed 07/24/25   Page 5 of 12

B. **Plaintiff's Objections to the M&R**

In his appeal, Mr. Dowell argues that the ALJ improperly analyzed his PTSD triggers, thereby preventing the Court from "review[ing] his conclusions meaningfully." Doc. No. 5 at 6. Specifically, Mr. Dowell believes that the ALJ discounted his "subjective symptoms "based on a perceived lack of objective corroboration," and that she failed to "consider whether his functioning would be different on some days due to his PTSD triggers." *Id.* at 7–12. In the M&R, however, the Magistrate Judge opined that the ALJ's analysis was sufficient, that she did not discount Mr. Dowell's subjectively reported symptoms, and indeed, that she properly considered fluctuations in his PTSD symptoms. *See* Doc. No. 8. Having reviewed the objections to the M&R de novo, the Court agrees with the Magistrate Judge's findings for the reasons discussed below.

    *a. Evaluation of Mr. Dowell's Subjective Symptoms*

Mr. Dowell first alleges that the M&R erred in finding his case "distinguishable from the Fourth Circuit's decision in *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023). Doc. No. 9 at 4. Specifically, Mr. Dowell contends that the ALJ relied "too heavily" on objective medical evidence to dismiss his subjectively reported PTSD symptoms. Doc. No. 9 at 5.

In 2020, the Fourth Circuit held that ALJs

> may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease.

*Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020).

This is because fibromyalgia is a "unique" disease, with "symptoms [that] are entirely subjective." *Clifford E. v. O'Malley*, No. 1:23CV704, 2024 WL 3105669, at *6 (M.D.N.C. June

6

24, 2024) (quoting *Arakas*, 983 F.3d at 97). Just two years later, the Fourth Circuit decided *Shelley C.*, expanding "other disease[s]" to include chronic depression (also called major depressive disorder ("MDD")). 61 F.4th at 361. In *Shelley C.,* the court explained that an ALJ "will not disregard [a claimant's] statements about the intensity, persistence, and limiting effects of [MDD] symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at 360 (emphasis added).

While Mr. Dowell, like the plaintiff in *Shelley C.*, has a severe impairment of MDD, his appeal challenges only the ALJ's analysis of his PTSD. Yet, the Fourth Circuit "has *not* extended its holdings in *Arakas* and *Shelley C.* to mental impairments other than [MDD]." *Clifford E.*, 2024 WL 3105669, at *9 (emphasis in original). Thus, "given the Fourth Circuit's repeated emphasis on the 'unique' nature of MDD, and the significant difference between the primary symptoms of [MDD and] PTSD"[2] (coupled with Mr. Dowell's contention that the ALJ violated *Shelley C.* only in connection with his PTSD), the Court, like the M&R, finds *Shelley C.* distinguishable from Mr. Dowell's case. *Id.*

But even if the Fourth Circuit had expanded *Shelley C.* to include PTSD, the ALJ did not rely exclusively—or "too heavily" as Mr. Dowell claims—on the absence of objective medical evidence to discount his PTSD symptoms, nor did she require such evidence to substantiate them. Instead, the ALJ found that the severity of Mr. Dowell's subjectively reported symptoms, in

---

[2] According to the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"), the primary symptoms of depression or MDD include "[d]epressed mood most of the day, nearly every day" and "[m]arkedly diminished interest or pleasure in all, or almost all, activities most of the day, nearly every day," whereas the primary symptoms of PTSD include "[e]xposure" to trauma which causes "[r]ecurrent distressing memories" and "dreams," "flashbacks," "[a]voidance," and "alterations in cognitions[,] mood[,] ... arousal[,] and reactivity." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 177, 301-2 (5th ed., text rev. 2022). *See Clifford E. v. O'Malley*, 2024 WL 3105669, at *9.

7

general, was inconsistent with "the medical evidence and other evidence in the record." Doc. No. 2-14 at 21. To be sure, when evaluating Mr. Dowell's reported PTSD symptoms, the ALJ references "normal and unremarkable" mental status examinations in her summary of the record. *See* Doc. No. 2-14 at 22, 25. Still, she devoted significant attention to evaluating and reconciling the discrepancies between Mr. Dowell's reported symptoms, his daily activities, and his own reports of symptom improvement with treatment.

For example, although Mr. Dowell reported visual and olfactory hallucinations at times, the record demonstrates that he also denied visual and auditory hallucinations at other times. Doc. No. 2-14 at 22. He also stated that his olfactory hallucinations were well controlled with medication, at one point, reporting that they had resolved completely. Doc. No. 2-14 at 22. Similarly, despite reporting that he felt unsafe and was triggered by people on his periphery, treatment enabled him to shop at the grocery store and "take his time," as well as join a sports team supporters club and attend club meetings. *Id.* at 20, 22.

Additionally, while Mr. Dowell alleged difficulties with concentration and attention, he reported attending medical appointments where his doctor noted his concentration and ability to pay attention to be "good," watching television, shopping for groceries, driving, and even coordinating a grassroots effort with a friend to provide support to fellow veterans. *Id.* at 18–22. And, though Mr. Dowell claimed he struggled to get along with others, citing an incident where he yelled at a customer in a prior job, he also reported attending soccer club meetings, going to church, supporting fellow veterans, visiting doctors, and shopping without issue. *Id.* at 18.

Finally, after a thorough review of the record, the ALJ credited Mr. Dowell's reported symptoms by crafting an RFC that restricted him to "unskilled work" that required concentration and attention for around "two hours at a time," limited him to work with only "routine and

8

Case 1:24-cv-00123-KDB-DCK     Document 10     Filed 07/24/25     Page 8 of 12

infrequent changes at a non-production pace," "occasional interaction with the public … coworkers and supervisors," and prohibited "teamwork for task completion." Doc. No. 2-14 at 19. Moreover, even assuming that PTSD is a condition like depression or fibromyalgia, *Shelley C.* does not preclude the ALJ from such considerations. While 'a claimant's allegations about her [depression] may not be discredited solely because they are not substantiated by objective evidence' … they need not be accepted to the extent they are inconsistent with the available evidence." *Shelby D. v. Kijakazi*, No. 3:22-CV-00234, 2023 WL 6444895, at *11 (S.D.W. Va. Sept. 29, 2023) (quoting *Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-21-cv-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023)). Further, "the impropriety of relying upon objective medical evidence of symptoms does not mean that the Agency must ignore any evidence whatsoever in ... medical records." *Id.*

Thus, properly limited, "*Shelley C.* and *Arakas* prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions," but do not disallow the consideration of other evidence contrary to a finding of disability. *Jarius B. v. O'Malley*, No. 3:22-CV-748-SLS, 2024 WL 1356680, at *7 (E.D. Va. Mar. 28, 2024) (quoting *Anthony P. v. O'Malley*, No. 1:22-CV-291, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024)) (finding that the ALJ "did not discount Plaintiff's subjective complaints [in violation of *Arakas* and *Shelley C.*] simply because the complaints were not corroborated by the record's medical evidence. Rather, ... the ALJ here looked at multiple factors in evaluating Plaintiff's symptoms, including Plaintiff's own statements, his robust daily life activities, and his treating provider's observations."); *see also Strader v. O'Malley,* No. 5:22-CV-367-M-BM, 2024 WL 796523, at *8 (E.D.N.C. Feb. 2, 2024), *report and recommendation adopted,* No. 5:22-CV-00367-M-BM, 2024 WL 779225 (E.D.N.C. Feb. 26, 2024) (explaining that "while *contradictory*

9

medical or other evidence may discredit Plaintiff's subjective statements regarding the limiting effects of her pain [or depression], a *mere absence* of medical evidence cannot."). For the foregoing reasons, Mr. Dowell has not shown that the ALJ erred under *Shelley C.*, and his first objection to the M&R fails.

### b. *Evaluation of Mr. Dowell's PTSD Triggers*

In his second objection to the M&R, Mr. Dowell contends that the magistrate judge erred in distinguishing his case from the Fourth Circuit's decision in *Rogers v. Kijakazi,* 62 F.4th 872 (4th Cir. 2023), and otherwise failed to "engage meaningfully" with his PTSD triggers and symptoms. Doc. No. 9 at 3.

In *Rogers,* a plaintiff claiming disability related to PTSD alleged that her "abilities fluctuate[d] during her menstrual cycle, such that her functioning[, along with her flashbacks and anxiety, were] drastically worse each month during [menstruation]," 62 F.4th at 880. *Id.* However, the ALJ omitted *any* discussion of the cycle-related evidence. *Id.* at 881. Here, Mr. Dowell argues that the ALJ similarly failed to consider how his functioning fluctuates in response to his PTSD triggers and omitted discussion of records demonstrating the functional impairments caused by them. Doc. No. 9 at 3.

The RFC is the "most the claimant can still do despite physical and mental limitation," *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)) (citation modified), and Social Security Ruling ("SSR") 96-8p requires evaluation of a claimant's ability to perform sustained work on a normal (full-time) schedule. *See Rogers,* 62 F.4th at 880. Considered together, neglecting to discuss a disease exacerbation lasting for up to a week every single month— as in *Rogers*—is not a benign omission because it would indelibly impact "the most" a claimant could do on a full-time work schedule. Mr. Dowell, however, does not have a condition that would

10

routinely (and predictably) exacerbate his PTSD for a considerable duration each month. Further, Mr. Dowell fails to identify similarly significant evidence that the ALJ failed to consider in his case.

Next, Mr. Dowell broadly asserts that the ALJ failed to "engage meaningfully" with his triggers and resulting symptoms, such as anxiety, depression, social withdrawal, hallucinations, hypervigilance, paranoia, poor hygiene, etc. Doc. No. 9 at 3. However, the ALJ's decision reflects a robust discussion of both. Indeed, the ALJ identified triggers including "people on his periphery, loud noises (voices, doors being closed, books being dropped), and mostly smells." Doc. No. 2-14 at 20. She described symptom effects ranging from hypervigilance and hallucinations to flashbacks, paranoia, anger, irritability and impaired concentration. *Id.* at 20, 22. The ALJ also acknowledged Mr. Dowell's reports of "not feeling safe [at times], visual and olfactory hallucinations, and nightmares." *Id.* at 22–23.

In her decision, the ALJ gave substantial weight to Dr. Andert, an impartial psychologist who testified at the hearing. Dr. Andert noted a report indicating that Mr. Dowell's "bad days" could affect functionality and work attendance, but it was issued more than four years after the DLI, and the ALJ determined that it had limited relevance to his condition before that date. *Id.* at 23–24. More importantly, those periods of exacerbation were not "documented much in the period prior to the DLI," and the ALJ, therefore, reasoned that no limitations were warranted. *Id.* And, as noted, Mr. Dowell reported symptom improvement (or cessation) with medication and treatments. Doc. No. 2-14 at 22.

Thus, Mr. Dowell has not shown that the ALJ erred under *Rogers*. The ALJ meaningfully considered both Mr. Dowell's PTSD triggers and his associated symptoms, and she provided a reasonable rationale for not including fluctuation restrictions in the RFC. *Id.* Ultimately, the

11

Court's review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson,* 402 U.S. at 404. Even if there is other evidence that may support Mr. Dowell's position, the Court is not permitted to reweigh it or to substitute its own judgment for that of the ALJ. *See Drumgold v. Comm'r of Soc. Sec.*, ___ F.4th___; No. 24-1394, 2025 WL 2017232, at *5 (4th Cir. July 18, 2025) (holding that because the ALJ is the trier of fact, the duty to resolve conflicting medical evidence lies with the ALJ, and explaining that when the ALJ "does that by applying the correct factors, we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake."). Here, the ALJ supported her conclusions with substantial evidence and used the correct legal standards; therefore, remand is unwarranted.

## I. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's appeal (Doc. No. 5) is **DENIED;** Plaintiff's Objections to the M&R (Doc. No. 9) are **OVERRULED;** and the Court **ADOPTS** the M&R (Doc. No. 8) and **AFFIRMS** the Commissioner's decision.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 24, 2025

Kenneth D. Bell
United States District Judge